**BRONCO WINE COMPANY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF TREASURY, The Bureau of Alcohol, Tobacco & Firearms, et al., Defendants.**

No. CV–F–96–6354–REC/DLB.

United States District Court,
E.D. California.

Dec. 24, 1996.

Malcolm S. Segal, Segal & Kirby, Sacramento, CA, Frank C. Damrell, Jr., Damrell, Nelson, Schrimp, Pallios, and Ladine, Modesto, CA, E. Vincent O'Brien, Buchman and O'Brien, for Plaintiff.

D. E. Bensing, U.S. Dept. of Justice, Washington, DC, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

COYLE, District Judge.

Plaintiff Bronco Wine Company ("Bronco" or "Plaintiff") moves for a Temporary Restraining Order ("TRO") to prevent the United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms ("BATF" or "the Agency") from restricting the sale and distribution of its wines across the nation. Plaintiff argues that without a TRO, it will suffer irreparable and substantial injury, and that eventually, its underlying challenge is likely to succeed on the merits. Upon due consideration of the oral and written record, Plaintiff's motion is hereby denied.

I. *Introduction*

This action for injunctive relief arises out of a dispute over Bronco's right to bottle, package, sell, and market wine in the United States under the "Rutherford Vineyards" label. In 1994, Bronco purchased the Rutherford Vineyards trade name, and in the same year, one of its bottlers applied for and received approval from the BATF of Certificates of Label Authority ("COLAs") to produce wine under the Rutherford Vineyards trade name. In 1995, the same bottler applied for and received a total of eleven (11) COLAs from the BATF for Rutherford Vineyards' wine labels bearing "California"—what Bronco claims to be is the appellation of origin. In reliance on these approvals, Bronco claims it invested more than $750,000.00 on packaging and more than $1,000,000.00 on marketing and promotion of its Rutherford Vineyards wine.

In October 1996, the BATF issued a detention order and seized approximately 32,000 cases of Rutherford Vineyards wine. The BATF later released the detained wine, but issued a formal warning to Bronco and its bottling companies that any further bottling of Rutherford Vineyards wine or sales in *interstate* or *foreign* commerce would be considered a willful violation of federal law, par-

ticularly, 27 C.F.R. § 4.39(i). Notwithstanding attempts by Bronco to resolve this issue directly with the BATF, on December 11, 1996, the BATF issued its final decision confirming its·restrictions against the sales of Rutherford Vineyards wines. In the meantime, Plaintiff notes that the BATF has admitted that there are 15 or 20 other wineries whose labels may violate federal law, but none, to the best of Plaintiff's knowledge, who have faced restrictions similar to those imposed on Plaintiff. Plaintiff has not, however, provided the court with any evidence confirming such allegations.

Plaintiff urges the court to recognize that all these events transpired shortly before the single highest volume selling period of the year, the period between Thanksgiving and New Year's Eve. Furthermore, Bronco avers that the success of wine sales during the holiday season greatly affects a product's marketability in the following year. Moreover, according to Plaintiff, the BATF's restrictions on the sales of Rutherford Vineyards wines have severely damaged Bronco's reputation with its customers, some of whom have even ceased purchasing other Bronco wines, citing their lack of trust in Bronco's ability to ship its wines as the reason. Simply stated, Bronco argues that it has suffered, and continues to suffer severe, irreparable harm because of the restrictions imposed by the BATF.

Bronco bases the instant suit on several grounds. First, Plaintiff argues that the BATF has effectively deprived Bronco of its property rights without a hearing, infringing its rights under the Due Process Clause of the Fifth Amendment. Furthermore, Plaintiff contends that the BATF's action constitutes a taking without just compensation in violation of the Takings Clause of the Fifth Amendment. Moreover, Plaintiff argues that the BATF also violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., because its actions have been "arbitrary and capricious." Finally, Plaintiff asserts that the regulation upon which the BATF based its decision is inconsistent with inter-national agreements entered. into by the United States.

## II. *The Federal Alcohol Administration Act*

The Federal Alcohol Administration Act ("FAAA"), codified in 27 U.S.C. § 201, et seq., establishes the regulatory scheme which governs the bottling, packaging, and labeling of wine. Passed in 1935, this statute was intended to prohibit practices in the alcoholic beverages industry "that Congress had judged to be unfair and deceptive, resulting in harm to both competitors and consumers." *Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1547 (10th Cir.1991).

The BATF is the agency authorized by the FAAA to promulgate regulations which further the policies expressed in the statute. These regulations, found in Title 27 of the Code of Federal Regulations, compel the BATF to reject labels which convey erroneous information as to the age, identity, origin or other characteristics of the product in question. 27 C.F.R. § 5.34.

The regulations in Title 27 set forth the conditions for use of an appellation .of origin on a wine label. Section 4.25a(e) provides that an American viticultural area[1] may be used as an appellation of origin only if the appellation has been approved under Part 9 of· the regulations, and not less than 85 percent of the wine is derived from grapes grown within the boundaries of the viticultural area. The name "Rutherford" was approved as an American viticultural area in 1993. *See* 27 C.F.R. § 9.133. Thus, under the regulations, Rutherford may not be used as an appellation of origin on a wine label unless 85 percent of the wine in question was derived from grapes grown within the recognized boundaries of the Rutherford viticultural area.

Section 4.39(i) regulates the use of brand names of viticultural significance. "Rutherford Vineyards" is one such brand name, since it incorporates the name of a viticultur-

---

1. A viticultural area is defined in 27 C.F.R. § 4.25a(e)(1) as "A delimited grape growing region distinguishable by geographical features, the boundaries of which have been recognized and defined in part 9 of this chapter."

al area as part of the brand name. Section 4.39(i) provides:

(1) Except as provided in subparagraph 2, a brand name of viticultural significance *may not be used* unless the wine meets the appellation of origin requirements for the geographic name.

(2) For brand names used in existing certificates of label approval [COLAs] issued prior to *July 7, 1986* :

(i) The wine shall meet the appellation of origin requirements for the geographic area named; or

(ii) The wine shall be labeled with an appellation of origin, in accordance with § 4.34(b) as to location and size of type of either:

(A) A county or viticultural area, if the brand name bears the name of a geographic area smaller than a State, or

(B) A state, a county, or a viticultural area, if the brand name bears a state name; or

(iii) The wine shall be labeled with some other statement which the Director [of the BATF] finds to be sufficient to dispel the impression that the geographic area suggested by the brand name is indicative of the origin of the wine. (emphasis added).

Simply stated, this section provides that a brand name of viticultural significance *may not be used unless* the wine either (1) meets the appellation of origin requirements for the geographic area named; (2) is "grandfathered" in that the brand name is one for which a COLA was issued prior to July 7, 1986, *and* is qualified with an appellation of origin; or (3) is grandfathered (in the same manner described above), *and* the Director of the BATF decides that some other statement is sufficient to dispel the suggestion that the geographic area suggested by the brand name is indicative of the origin of the wine.

### III. *The BATF's Decision*

The BATF based its decision to restrict the sales of Rutherford Vineyards wines on the requirements of Section 4.39(i). Specifically, the BATF noted that the Rutherford

wines with the "California" designations did not meet the appellation of origin requirements of the Rutherford viticultural area. (Damrell Decl., Exhibit I). Furthermore, the Agency notified Bronco that the Rutherford Vineyards brand wine had capsule labels with the word "Rutherford" and that such labels were not part of the approved COLAs and accordingly violated 27 C.F.R. § 4.50. The BATF also notified Bronco that neither of the grandfathering provisions applied to Rutherford Vineyards since the BATF's search revealed that no brand name of "Rutherford Vineyards" was ever used on COLAs issued prior to July 7, 1986. *Id.* But the BATF did not stop there. The agency informed Bronco that even if the grandfathering provisions did apply to the brand name Rutherford Vineyards, the winery would still be in violation of Section 4.39(i). The fact that the labels in question do not bear a *county* or *viticultural area* appellation of origin,[2] or any other statement sufficient to dispel the suggestion that the wines are from the Rutherford area, meant that Bronco was not in compliance with the FAAA even under the more lenient grandfathering provisions. *Id.* Accordingly, the BATF explained that the Rutherford Vineyards brand name can only be used to label wines entitled to the Rutherford appellation of origin. Put another way, the name "Rutherford Vineyards" may not be used unless 85 percent of the wine in question is derived from grapes grown within Rutherford. This, Bronco conceded, was simply impossible. Finally, Plaintiff was informed that the FAAA did not apply to *intrastate* commerce or sales for *export* purposes. Thus, even now, Bronco may export the Rutherford Vineyards brand wines as well as sell them in California.

The BATF thus concluded that none of the wines with the "Rutherford Vineyards" brand name were in compliance with the FAAA. (Newman Decl., Exhibit D). As to the wines labeled "Rutherford Vintners," a brand name for which a COLA was issued prior to July 7, 1986, the agency reached a similar conclusion, albeit through different reasoning. *Id.* The BATF noted that Rutherford Vintners wines were grandfathered,

---

2. They only identify a state (California).

and could be in compliance with the FAAA if the labels either stated the county or viticultural area of origin, or if some other statement dispelled the impression that the geographic area suggested by the brand name is indicative of the origin of the wine. According to the BATF, Bronco satisfied neither of the requirements. Since "California" is not a county or viticultural area, the first provision was inapplicable. Furthermore, upon careful review of the actual labels, the BATF decided that a simple appellation of "California" was not sufficient to dispel the impression that the wine in question might originate in Rutherford. Consequently, the BATF affirmed its October 10th ruling.

In the BATF's letter [to Bronco.] of October 10, 1996, the Agency conceded that it had already approved several COLAs for wines labeled with a "Rutherford Vineyards" brand name and a California designation. Rather than addressing the issue directly, and never denying the validity of the COLAs if used in compliance with § 4.39(i), the BATF informed Bronco that it was in the process of "conducting an investigation into whether these labels have been unlawfully applied to wines which do not meet the requirements for a Rutherford appellation of origin." In the BATF's December 11th letter, the agency maintained its position that it was investigating the issue.

## IV. *Temporary Restraining Order*

In light of the foregoing, Plaintiff Bronco seeks a TRO which would order the BATF to refrain from enforcing its rulings until resolution of the issues on their merits. The court has authority to grant a TRO in the exercise of its equitable powers. Federal Rule of Civil Procedure 65. The purpose of a TRO is to preserve the status quo pending a full hearing on a preliminary injunction. *Cf. Los Angeles Mem. Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980). A party seeking a TRO must satisfy the same test required for the issuance of a preliminary injunction. *See Lockheed Missile & Space Co. v. Hughes Aircraft Co.,* 887 F.Supp. 1320, 1322 (N.D.Cal.1995). The Ninth Circuit spelled out the standards governing the issuance of a preliminary injunction in *Martin v. International Olympic Committee,* 740 F.2d 670, 674–75 (9th Cir.1984):

> In this circuit, a party seeking preliminary injunctive relief must meet one of two tests. Under the first, a court may issue a preliminary injunction if it finds that:
>
> (1) the [moving party] will suffer irreparable injury if injunctive relief is not granted, (2) the [moving party] will probably prevail on the merits, (3) in balancing the equities, the [non-moving party] will not be harmed more than the [moving party] is helped by the injunction, and (4) granting the injunction is in the public interest.
>
> ... Alternatively, a court may issue a preliminary injunction if the moving party demonstrates 'either the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.' ... Under this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.

The Ninth Circuit has concluded, however, that these two tests are "not really two entirely separate tests, but that they are merely extremes of a single continuum." *Benda v. Grand Lodge of IAM,* 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). However, at no point in the continuum is the court "bound to decide doubtful or difficult questions of law." *Dymo Industries, Inc. v. Tapeprinter, Inc.* 326 F.2d 141, 143 (9th Cir. 1964).

## V. *Discussion*

### A. *Likelihood of Success on the Merits*

Plaintiff Bronco invokes the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2) as the basis for its request that this court enjoin the BATF. Under the APA, agency decisions may be held unlawful and set aside if they are found to be:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

Although Bronco states that injunctive relief is warranted on each of these six grounds, its papers reveal that the crux of its argument focuses on the first two subsections of Section 706(2). For the reasons discussed below, the court today finds that Plaintiff is unlikely to succeed on any of the claims advanced.

### 1. Arbitrary and Capricious

■ Bronco first argues that the BATF's ruling was arbitrary and capricious. A court reviewing an agency decision under the "arbitrary and capricious" standard is not given great discretion, and may not simply substitute its own judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 42, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Instead, the court must look to see whether the agency articulated reasons for its decision, whether those reasons were based on relevant factors, and whether the agency's decision had some rational basis. *Id.* at 42–45.

■ In support of its argument that the BATF's decision was arbitrary and capricious, Bronco cites to *Cabo Distribution Co., Inc. v. Brady*, 821 F.Supp. 582 (N.D.Cal. 1992). In somewhat similar facts, the plaintiff in *Cabo* brought an action challenging the decision of the BATF, which had revoked COLAs for plaintiff's "Black Death Vodka" label. The label, in addition to bearing a sanguine name, carried the image of a skull wearing a top hat. The *Cabo* court granted both plaintiff's motions for TRO and preliminary injunction. In so doing, the court found that the BATF's decision was both arbitrary and capricious, and that it violated plaintiff's constitutional right to procedural due process. The BATF had stated two grounds for its decision to revoke plaintiff's COLAs in "Black Death Vodka." First, the Agency found that since Black Death was a plague which killed millions of people, this name coupled with the image of a skull printed on the label created the impression "that the product is inherently unsafe for human consumption at any level." *Id.* at 592. In addition, the Agency stated that the label "mocks the real health risks which may result from the consumption of alcohol by making an obviously false claim about the dangers of alcohol consumption." *Id.* Thus, the BATF concluded that revoking the COLAs was necessary to prohibit "deception to consumers." *Id.* The Agency felt that it was authorized to engage in such action pursuant to 27 C.F.R. § 5.34(a), which obligates the Agency to reject labels which "convey erroneous impressions as to age, origin, identity, or other characteristics of the product." The *Cabo* court rejected the BATF's conclusions and set aside its ruling. The court declared that the second reason advanced by the Agency for its decision, that consumers will ignore inherent dangers of alcohol was neither relevant to the language or purpose of Section 5.34. *Id.* at 596. At its root, the court held, is the Agency's concern with the perceptions of the safety of alcohol in general. *Id.* By citing this as a reason for its decision, the court held that the BATF was overstepping its bounds—it had engaged in regulation of marketing rather than labeling. *Id.* The court went on to address the BATF's first reason for its decision—that consumers will believe that the product is poison. The court noted that although this reason was relevant to the language and purposes of Section 5.34, it lacked rational basis and was plainly absurd. Indeed, as the court noted, the two reasons offered by the BATF conflicted with each other—a label which dissuades people from trying the vodka for fear that it is poisonous cannot simultaneously seduce the same people into trying it by purposely diminishing the dangerous effect of alcohol, the court reasoned.

Bronco's reliance on *Cabo* is misplaced. For the reasons described below, the BATF's decision in this case was both related to its concern for deceptive labeling, and rationally made through application of the regulations enacted by the Agency.

In this case, as in *Cabo*, the BATF articulated reasons for its decision—in correspondence to Plaintiff, the BATF explained that the Rutherford Vineyards label was in violation of 27 C.F.R. § 4.25a(e)(3), and 27 C.F.R. § 4.39(i). Plaintiff argues that the BATF's reference to § 4.25a(e)(3) (the section which defines requirements for labels which identify viticultural area appellations of origin) was irrational. Specifically, Plaintiff notes that since the Rutherford Vineyards labels never made assertions that the appellation of origin of the wine was anything other than California, the BATF erroneously looked to § 4.25a(e)(3) in evaluating Bronco's case. Plaintiff has missed the point. Although it is true that Bronco never claimed that the wines bearing the Rutherford Vineyards labels originated in Rutherford, the issue is whether Plaintiff could lawfully use the Rutherford Vineyards brand name for wines originating anywhere other than Rutherford. *See* § 4.39(i). Since § 4.39(i) implicitly refers to § 4.25a(e)(3), the BATF's consideration of the latter provision was hardly irrational—it would have been irrational to fail to consider it.

In the alternative, Plaintiff argues that the BATF's initial approval of the eleven COLAs bearing the Rutherford Vineyards brand name with the California appellation demonstrates that the BATF's decision to prohibit further sales of the wines was irrational. The Agency disputes Plaintiff's assertions and claims that it only granted COLAs for wines of the Rutherford appellation—"California" was simply a reference above a varietal designation. The Agency's explanation is unsatisfactory. However, even assuming that the Agency initially granted the COLAs with a California appellation erroneously, it cannot be said that an agency's decision to rectify a previous mistake is an arbitrary or capricious act.

Furthermore, Plaintiff contends that the BATF's selective enforcement of its regulations is an arbitrary agency action. Citing to numerous examples of other wineries which use brand names incorporating the word "Rutherford" and carrying a "California" appellation, Bronco claims that the BATF is in effect assisting Bronco's competitors in a tight market. Again, Plaintiff's argument must be rejected. Although there may be other wineries guilty of the same practices Bronco is accused of, there is no evidence to suggest that the BATF is engaging in any discrimination. Moreover, much of Bronco's assertions are based upon information and belief, rather than on concrete evidence upon which this court can make a reasoned decision.

Finally, Bronco argues that the enactment of § 4.39(i) itself is an arbitrary and capricious decision. Namely, there is no rational basis upon which the BATF could have decided to "grandfather" brand names incorporating viticultural areas which were in existence as of July 7, 1986. The July 7, 1986 date has no relation to whether a particular brand name pre-dated the subsequent adoption of a viticultural area, Bronco argues. As an example, Bronco notes that brand names such as "Rutherford" or "Oakville," in use after July 7, 1986, but before July 2, 1993, the date of adoption of these viticultural areas, are not grandfathered. Bronco points out that this is a belief already acknowledged by the BATF. Bronco notes that in 1992, the BATF sought to amend § 4.39(i) to allow brand names approved after July 7, 1996, but before the approval of the viticultural area to also be grandfathered. *See* 57 Fed.Reg. 27401, June 19, 1992, (Damrell Decl., Exhibit S). Without explanation, however, the BATF abandoned this proposal, Bronco asserts. Thus, this provision remains uncorrected and now is being enforced by the same agency which expressed doubt about its validity.

The BATF responds to this argument by conceding that § 4.39(i) contains a regulatory oversight. However, the Agency argues that Bronco should be estopped from challenging the grandfathering provision because it would not have benefited from the proposed change to the regulation. The BATF points out that neither Plaintiff nor any other win-

ery ever used the "Rutherford Vineyards" brand name *in a COLA* until September 1994, a short time *after* Rutherford became an approved viticultural area. Thus, although the July 7, 1986 date might be arbitrary, its arbitrariness had no bearing on Plaintiff's case, the BATF asserts. The court is persuaded by the Agency's argument and finds that Plaintiff is not likely to succeed in its challenge of § 4.39(i).

### 2. *Constitutional Violations*

Subsection (B) of the APA authorizes a court to set aside agency action which is contrary to a constitutional right, power, or privilege. Bronco argues that this court may thus set aside the decision of the BATF because it infringes on several of its constitutional rights. Bronco's arguments are brought both under the APA and directly under the Constitutional provisions to which they relate. Consequently, if this court had found that the BATF's actions violated Bronco's constitutional rights, there would have been two avenues through which the court could strike down the Agency's rulings. The analysis under both a direct constitutional challenge and under the APA is the same; as a result, it will be addressed only once.

### a. *Procedural Due Process*

■ Bronco's constitutional challenge begins with the Due Process Clause of the Fifth Amendment. Due process, at a minimum, requires that an agency, before depriving a person of a property interest, give that person adequate notice that a decision is being considered and an opportunity for a hearing. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Thus, due process analysis begins with determining whether there is a property right that is protected by the Constitution. *Peterson v. United States Dept. of the Interior,* 899 F.2d 799, 807 (9th Cir.1990). In *Cabo,* the court held that COLAs are property interests in that they are issued for a potentially unlimited period of time, and are essential to plaintiff's livelihood. *Cabo,* 821 F.Supp. at 597. "As such, the licenses create 'important interests' which cannot be 'taken away without the procedural due process required by the Fifth

Amendment.'" *Id.* (citations omitted). Although the COLAs at issue have not been revoked, as with the situation in *Cabo,* Bronco argues that the eleven COLAs bearing the California appellation of origin have been constructively revoked, because Plaintiff is in effect prohibited from using them. The court does not address the merits of this argument because the court rejects Plaintiff's procedural due process claim on separate grounds, as described below.

■ The court finds today that Plaintiff cannot assert a claim for violation of procedural due process for deprivation of property interests which are owned by other entities, namely, its bottlers. It is undisputed that the BATF granted the COLAs in question not to Plaintiff, but to its bottlers. Accordingly, it is the bottlers who may challenge the BATF's actions. At oral argument, counsel for Bronco informed the court that the bottlers were "attorneys in fact" for Bronco. However, Bronco has not provided the court with any documentation to support its contention. Thus, the court is not persuaded by Plaintiff's argument. Furthermore, Plaintiff has not offered the court any authority suggesting that a party may assert a procedural due process claim based on the deprivation of property owned by another. As a result, the court finds that Plaintiff is not likely to succeed on the procedural due process claim.

### b. *Takings Clause*

■ Plaintiff's Takings claim is not meritorious. The Takings Clause of the Fifth Amendment provides "private property [shall not] be taken for public use, without just compensation." As discussed above in the context of Plaintiff's procedural due process claim, a COLA is a property interest deserving of protection by the Takings Clause. However, for the same reasons discussed above, Plaintiff may not assert a Takings claim for a deprivation of property owned by another. Consequently, the court does not find that Plaintiff is likely to succeed on this claim.

### c. Inconsistency with Trademark Laws and Foreign Treaties

■ Finally, Bronco contends that § 4.39(i) is inconsistent with the protection offered trademark holders by international agreements between the United States and other nations. Specifically, Plaintiff points to the Agreement on Trade Related Aspects of Intellectual Property (TRIPS), which was part of the Uruguay Round of the General Agreement on Tariff and Trade (GATT). Section 3512(c)(1). However, as the government points out, there is no private right of action under the agreement. *See* Public Law 103–465. Likewise, Plaintiff's reference to the resolution of the Office International de la Vigne et du Vin (OIV) is misplaced. Plaintiff has not pointed to a single authority which suggests that private persons have a cause of action under this international agreement. Furthermore, as the BATF points out, resolutions of the OIV are not legally binding on OIV members unless the member country adopts the resolution into their national legislation. Upon joining the OIV in 1984, the United States specifically rejected adoption of the position taken by the OIV regarding appellations of origin, the provision upon which Plaintiff relies.

Moreover, Plaintiff's contention that the BATF's regulations are inconsistent with U.S. Trademark laws is equally flawed. A grant of a trademark by the governing agency is not a *carte blanche* to use the mark for any and all purposes. Implicit in such a grant is the obligation to use the trademark in compliance with other valid laws, even if, as a practical matter, such laws limit the use of the trademark. The BATF's regulations do not nullify Plaintiff's trademark in "Rutherford Vineyards"—they merely put restrictions on wine which accompanies the trademark. Accordingly, Plaintiff's challenge on this ground also may not stand.

### B. Irreparable Harm

■ Bronco argues that it stands to lose in excess of $3,000,000 in revenues during the 1996 holiday season alone on its Rutherford Vineyards wine. This figure is based on the projected 60,000 cases that would be sold. Furthermore, the winery has already spent $750,000 in packaging and more than $1,000,000 in marketing and promoting the Rutherford wines. Finally, Plaintiff argues that it will lose significant goodwill if it is unable to continue selling its product. Specifically, Plaintiff contends that Bronco's reputation is being severely and irreparably damaged by the BATF's actions, with animosity building against Rutherford Vineyards among retailers, restaurants, and wholesalers who depend on a supply of Rutherford wine. This negative publicity has limited Bronco's ability to sell its other wines, Plaintiff asserts.

Balanced against Bronco's economic plight is the impact on both deceived consumers and other wine producers who have followed federal wine labeling regulations. Citing to provisions of the Congressional hearing on the adoption of the labeling provisions, the BATF notes that its regulations "were intended to insure that the purchaser should get what he thought he was getting, that representations both in labels and in advertising should be honest and straight forward and truthful." (Def's Opp. to TRO, at 19, *citing* Hearings before the Committee on Ways and Means on H.R. 8539. 74th Cong., 1st Sess. 10 (1935)).

The court acknowledges Bronco's financially precarious position. However, the court is not persuaded that Plaintiff will suffer irreparable harm absent a court order enjoining the BATF from enforcing its legitimate regulations. Furthermore, the court is cognizant of the deleterious effect Bronco's actions have had, and will continue to have on unsuspecting consumers who purchase Plaintiff's wine. This effect is underscored by the statement on Bronco's bottles that the wine is "bottled and cellared in Rutherford, California." Such a statement serves only the purpose of deceiving the consumer into believing that the origin of the wine is indeed Rutherford. At the very least, such a statement certainly does not dispel the possible (mis)perception by the unknowing public that the wine might be from Rutherford. Consequently, the court today finds that Bronco's labels are not only inconsistent with the letter of the BATF's regulations, but also with their spirit. These factors, coupled with the fact that the court does not find that Plaintiff

is likely to succeed on any of its claims directs only one result—that Plaintiff's motion should be denied.

Accordingly, IT IS ORDERED that Plaintiff' Motion for Temporary Restraining Order is DENIED.