**SOCIEDAD ANONIMA VIÑA SANTA RITA, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF THE TREASURY, et al., Defendants.**

**No. CIV.A. 01–1573(CKK).**

United States District Court, District of Columbia.

Aug. 13, 2001.

Peter M. Brody, Ropes & Gray, Washington, DC, for Plaintiff.

Daniel Bensing, U.S. Department of Justice, Civil Division, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Before the Court is Plaintiff Sociedad Anonima Viña Santa Rita's Motion for Temporary Restraining Order and Preliminary Injunction,[1] in which Plaintiff challenges a final rule issued by the Department of the Treasury's Bureau of Alcohol, Tobacco and Firearms ("ATF" or "Bureau"). In that final rule, issued on May 31, 2001, the ATF recognizes "Santa Rita

Hills," an area in Santa Barbara County, California, as an American viticultural area ("AVA"). In light of the region's status as an AVA, wines produced predominantly from grapes grown there may, with the ATF's approval, be sold with labels that employ the term "Santa Rita Hills" as an appellation of origin.[2]

Plaintiff, a Chilean winery, sells a variety of wines around the world under the brand name "Santa Rita" and has done so for decades. In reaction to the ATF's final rule establishing the Santa Rita Hills AVA, Plaintiff filed suit and simultaneously requested that the Court issue a temporary restraining order or preliminary injunction suspending the effective date of the final rule.[3] Specifically, Plaintiff asserts that the ATF's issuance of the final rule amounts to arbitrary and capricious conduct in violation of the Administrative Procedure Act, that the final rule infringes on Plaintiff's trademark in the name "Santa Rita," and that it dilutes the value of that trademark. Upon consideration of Plaintiff's motion, the ATF's opposition thereto, Plaintiff's reply, Plaintiff's supplemental memorandum, the ATF's supplemental memorandum, Plaintiff's second supplemental memorandum, and the Administrative Record, the Court shall deny

1. With the agreement of the parties, the Court combines its consideration of Plaintiff's requests for a temporary restraining order and for a preliminary injunction. *See* July 24, 2001, Trans. (conference call).

2. While the final rule provides for an effective date of July 30, 2001, the parties have filed a joint stipulation in which they agree "that defendants shall not approve any label bearing the name 'Santa Rita Hills' as either an appellation of origin or as a reference to an American viticultural area, before August 14, 2001." Stipulation (filed August 1, 2001).

3. Plaintiff filed an Amended Complaint on August 3, 2001. The amended version differs

from the original only to the extent that it includes a request for declaratory judgment in the prayer for relief. Plaintiff had included such a request in the first paragraph of its original Complaint, but had neglected to repeat it in its prayer for relief.

Like the original Complaint, Plaintiff's Amended Complaint names four separate defendants: the United States Department of the Treasury; the Bureau of Alcohol, Tobacco and Firearms; Paul H. O'Neill, Secretary, United States Department of the Treasury; and Bradley A. Buckles, Director, Bureau of Alcohol, Tobacco and Firearms. For convenience, the Court refers to the defendants collectively as the "ATF".

the motion and decline to grant preliminary injunctive relief.

## I. STATUTORY AND REGULATORY FRAMEWORK

Soon after the Twenty-first Amendment to the Constitution was ratified and the country's experiment with prohibition ended, Congress enacted the Federal Alcohol Administration Act, 27 U.S.C. § 201 *et seq.* ("FAA" or "Act"), which, among other things, governs the bottling, packaging, and labeling of wine. Specifically, the FAA prohibits interstate commerce in wine unless the bottles are

> labeled in conformity with such regulations, to be prescribed by the Secretary of the Treasury ... (1) as will prohibit deception of the consumer ... and as will prohibit, irrespective of falsity, such statements ... as the Secretary of the Treasury finds to be likely to mislead the consumer; (2) as will provide the consumer with adequate information as to the identity and quality of the products ... and the manufacturer or bottler or importer of the product; ... (4) as will prohibit statements on the label that are ... false [or] misleading; and (5) as will prevent deception of the consumer by use of a trade or brand name that is the name of any living individual of public prominence, or existing private or public organization....

27 U.S.C. § 205(e); *see also Wawszkiewicz v. Dep't of the Treasury,* 670 F.2d 296, 297–98 (D.C.Cir.1981). In order to ensure that all labels comply with this statutory mandate, Congress prohibits wineries and other affected entities from bottling their product or removing their product from customs until the Department of Treasury has issued a "certificate of label approval" ("COLA"). 27 U.S.C. § 205(e).

The Secretary of the Treasury has delegated its rule-making authority under the FAA to the ATF, *see Bronco Wine Co. v. Dep't of Treasury,* 997 F.Supp. 1309, 1311 (E.D.Cal.1996), and the ATF has, in turn, promulgated a series of regulations.[4] In direct correlation to the prohibitions articulated in the FAA, the ATF's regulations prohibit labels that include statements that are, for example, false or untrue, misleading, disparaging of competitor's products, obscene or indecent. *See* 27 C.F.R. § 4.39(a). The regulations also mirror the statute by requiring that the ATF issue a COLA before an imported wine is released from customs or before a domestic wine is bottled or packed. *See* 27 C.F.R. § 4.40(a) (imported wines); 27 C.F.R. § 4.50(a) (domestic wines).

The regulations also require that labels on American wines state "the name of the bottler or packer and the address ... of the place where the wine was bottled or packed." 27 C.F.R. § 4.35a(a). Likewise, labels on imported wines must include the words "imported by" followed by the name of the importer. 27 C.F.R. § 4.35a(b)(1). Additionally, foreign wine labels may indicate "the name and address of the principal place of business of the foreign producer," 27 C.F.R. § 4.35a(b)(2), and, under a Customs Service regulation, they must indicate the country of origin "in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit." 19 C.F.R. § 134.11; *see also* 27 C.F.R. § 4.38(c).

Of particular importance to this case, the ATF may establish an "American viti-

---

4. Notably, neither party disputes that Congress, through the FAA, has authorized the Department of the Treasury and the ATF to promulgate regulations that give force to the statutory directive. *See, e.g.,* Mem. in Supp. of Mot. for T.R.O. & Prelim. Inj. at 5 ("The FAA Act established broad federal regulatory authority over the interstate trade in alcoholic beverages and vested that authority in the Secretary of the Treasury and his delegates.").

cultural area" ("AVA") upon receipt of a qualifying petition from "any interested party." 27 C.F.R. § 4.25a(e)(2). To qualify, a petition must include a variety of "evidence" relating to the region in question, including information demonstrating that the name in question "is locally and/or nationally known as referring to the area specified," that the boundaries indicated in the petition are accurate, and that the viticultural features of the area are distinct from those found in surrounding regions. *See* 27 C.F.R. § 9.3(b). In the federal register entry that accompanies the final rule at issue in this case, the ATF explained why AVA approval is desirable for wineries and others involved in interstate commerce in wine. Specifically, the ATF noted that "[t]he regulations allow the name of an approved AVA to be used as an appellation of origin in the labeling and advertising of wine." Establishment of Santa Rita Hills Viticultural Area, 66 Fed. Reg. 29,476, 29,476 (May 31, 2001) (included in Administrative Record ("AR") at Tab I) [hereinafter "Final Rule"]; *see also* 27 C.F.R. § 4.25a(e)(3)(ii).

Notably, wineries and bottlers are generally barred from using the name of an AVA as a brand name unless the wine in question meets the appellation of origin requirements for the geographic area in question. *See* 27 C.F.R. § 4.39(i)(1). Thus, for example, a winery may not employ the phrase "Napa Valley" in one of its wine's brands unless a specified percentage of the grapes from which the wine was made were grown within the Napa Valley AVA. This general rule does not apply to

labels approved prior to July 7, 1986. Such grandfathered labels may use AVA names as brands as long as they include other information that "dispel[s] the impression that the geographic area suggested by the brand name is indicative of the origin of the wine." 27 C.F.R. § 4.39(i)(2)(iii).

## II. FACTUAL BACKGROUND

Plaintiff winery, Viña Santa Rita, was founded in 1880.[5] *See* Administrative Record ("AR"), Tab D(24) at 1–2 (Plaintiff's comments submitted to the ATF in opposition to the establishment of a Santa Rita Hills AVA). Using grapes grown in several regions of Chile, Plaintiff produces a variety of wines and exports them to markets around the world. See *id.*, Tab D(24) at 2. In 1997, Plaintiff sold 255,000 cases of wine in the United States, and, in the first half of 1998, Plaintiff ranked as the third largest exporter of Chilean wines to this country. *See id.* Plaintiff owns several trademarks in the United States with respect to its wines, including registered trademarks for "Santa Rita Reservado MRC D. Fernandez Concha Santiago De Chile," "Casa Real," and "120." *See id.*, Tab D(24), Attachment K (printout of trademarks). Notably, Plaintiff did not file an application for a trademark on the name "Santa Rita" until March 19, 1998. *See id.*, Tab D(24), Attachment M (certification of application).[6]

Not long before Plaintiff first sought formal statutory trademark protection for the name "Santa Rita" in the Spring of 1998, a group of wineries and other inter-

---

**5.** Plaintiff's full name, Sociedad Anonima Viña Santa Rita, appears to reflect its ownership structure. In comments submitted to the ATF in opposition to the creation of the AVA at issue in this suit, Plaintiff stated that "Cristalerias de Chile Sociedad Anonima owns 51% of Santa Rita with ADR's listed on the New York Stock Exchange." AR, Tab D(24) at 1.

**6.** The parties' pleadings and the Administrative Record establish that Plaintiff applied for a trademark on the name "Santa Rita" on March 19, 1998. Curiously, however, none of the voluminous materials filed with the Court in this matter appears to indicate if and when the trademark was published.

ested parties located in Santa Barbara County, California, began gathering support for the formation of an AVA under the name "Santa Rita Hills." *See id.*, Tab B(1)-(11). The mayor of Lompoc, California, wrote a letter of support in August 1997, *see id.*, Tab B(2), and, in February 1998, the Chair of the Santa Barbara County Board of Supervisors wrote to the ATF and stated that "[t]he Santa Rita Hills region of our County has been recognized viticulturally and enologically for producing world class cool-climate grapes." *Id.*, Tab B(1).

On March 31, 1998, the supporters of the proposed Santa Rita Hills AVA submitted a formal petition to the ATF seeking recognition. *See id.*, Tab A (Petition to Establish 'Santa Rita Hills' AVA). In addition to the letters of support, the petitioners included documentation of nineteenth-century land grants demonstrating the region was known by the name "Santa Rita" when it was the subject of a federal grant in 1845. *See id.*, Tab A, Ex. 1 at 1–4. The petitioners also provided the ATF with maps, book excerpts, and other historical texts in an effort to satisfy the evidentiary requirements for AVA approval. *See id.*, Tab A. After receiving the petition, the ATF published a notice in the Federal Register describing the proposal and "request[ing] comments from all interested parties." *See id.*, Tab C (Notice No. 866, *published at* 63 Fed.Reg. 48,658 (Sept. 11, 1998)). In aggregate, the ATF received thirty-five public comments, eleven of which supported the petition and twenty-four of which opposed it. *See id.*, Tabs B, D. Among the opposing comments was a massive submission prepared by Plaintiff, which argued strenuously that the name of the proposed AVA was confusingly similar to its own brand name. *See id.*, Tab D(24).

Many of the comments in opposition objected only to the name of the proposed

AVA, while implicitly acknowledging that the geographic designation may be meritorious. For instance, one distributor of Viña Santa Rita "urged" the ATF to "find another and more suitable name for this [AVA]." AR, Tab D(12). Another comment acknowledged that, "while a new viticultural area should be considered, certainly a different appellation name should be used." *Id.*, Tab D(13). A third "suggested that you name this entirely unfamiliar area Gallo Hills," sarcastically proposing that the petitioners name their proposed AVA after "an even better known winery." *Id.*, Tab D(17). The same opponent's comment exhorted the petitioners to "use another local geographical landmark as their name; one that does not infringe on the hard work and integrity with which Vina Santa Rita has promoted Chilean wines in the United States." *Id.*, Tab D(17). Likewise, a South Carolinian wine wholesaler commented as follows: "Please understand that I am not opposed to this particular delineated A.V.A.—only the name you are considering for it." *Id.*, Tab D(19).

The ATF received each of these comments during the formal comment period that the ATF established in its September 11, 1998, Notice announcing the proposed AVA. After the formal comment period had closed, however, the ATF received a notable comment from the one of the petitioning wineries on July 25, 2000. In pertinent part, the comment provided as follows:

> Considering the challenges brought forth by the Santa Rita Winery of Chile, and after great thought, we feel the confusion that may occur between the Chilean winery and our appellation would only prove to deter our marketing efforts in this country, and abroad.

> Therefore, in an effort to specifically clarify our geographic location, we pro-

pose the following appellation name change to:

## SANTA RITA HILLS of SANTA BARBARA

*Id.,* Tab F(4) (emphasis in original). The cover sheet that accompanied this comment indicated that "[t]he name proposed in the letter is only an option at this time, since the meeting to discuss the name change with the other pertinent wineries is not scheduled until August 9th." *Id.* Nonetheless, the cover sheet indicated that the petitioners "would truly appreciate [the ATF's] guidance with this process," and the comment letter itself requested "immediate consideration in this matter" and stated that the petitioners "look[ed] forward to [the ATF's] positive response" regarding the proposed name change. *Id.*

While the final rule and the remainder of the Administrative Record include no reference to this proposed name change, the ATF has explained that the proposed change was the tentative product of only one of the petitioners who supported the AVA.[7] *See* Defs.' Suppl. Mem. at 1–2; Decl. of Joyce Drake ¶ 2(d); Decl. of Marge Garcia Loehr ¶ 4. After a representative of that single winery submitted the tentative proposal, representatives from all of the pertinent wineries met to discuss the idea. *See* Defs.' Suppl. Mem. at 1–2; Drake Decl. ¶ 2(a), (b); Loehr Decl. ¶ 5. They ultimately decided to maintain their original application for an AVA under the name "Santa Rita Hills." *See* Defs.' Suppl. Mem. at 1–2; Drake Decl. ¶ 2(e); Loehr Decl. ¶ 5. Therefore, the representative of the original winery contacted the appropriate ATF representative to inform her that the petitioners did not wish to alter their application. *See* Defs.' Suppl. Mem. at 1–2; Drake Decl. ¶ 2(e); Loehr Decl. ¶ 6.

Thus, while one opponent cynically suggested changing the name to "Gallo Hills" and while one of petitioner submitted (and subsequently withdrew) a tentative proposed change, the ATF never received any genuine and legitimate proposals for alternative names.

On May 31, 2001, roughly ten months after receiving the informal suggestion of a name change, the ATF issued its final rule in which it approved the AVA under the name "Santa Rita Hills." *See* Final Rule, 66 Fed.Reg. 29,476. In the Federal Register entry accompanying the issuance of the final rule, the ATF described the thirty-five comments it had received and concluded that, notwithstanding the opponents' arguments, the petitioners' request for AVA approval satisfied each of the statutory and regulatory criteria. *Id.* at 29,476–77. Specifically, the ATF determined that the "maps, land records, reports, and various texts" attached to the application demonstrated that "[t]he name 'Santa Rita Hills' is locally and/or nationally known as referring to the specified area." *Id.* at 29,477. The Bureau also engaged in a careful analysis of the potential for consumer confusion and concluded that the "ATF does not foresee a likelihood of consumer confusion between the 'Santa Rita Hills' AVA and other geographic areas of the same name." *Id.* In support of this conclusion, the ATF observed that it has already approved several labels bearing the name "Santa Rita" for wines produced outside of Chile and that there has been "no reported consumer confusion as to the respective products' origins." *Id.* at 29,-478. Additionally, the ATF noted that confusion is unlikely because the labels on imported wines, like those produced by Plaintiff, must bear the words "Imported

---

7. The explanation is contained in the ATF's Supplemental Memorandum which the ATF submitted on August 6, 2001, in response to this Court's request for additional information.

by," followed by the name and address of the importer, and the words "Product of" followed by the country of origin. *See id.* With regard to the numerous comments suggesting that the proposed name would violate Plaintiff's trademark rights under the Lanham Trademark Act, the ATF stated that "these issues are matters of private dispute that do not restrict [the] ATF's authority to establish a viticultural area under the [FAA]." *Id.*

In response to the ATF's approval of the Santa Rita Hills AVA, Plaintiff filed suit on July 19, 2001, and simultaneously requested that this Court grant preliminary injunctive relief by ordering the ATF to suspend the effective date of the final rule. In its Amended Complaint and motion, Plaintiff asserts that the ATF's approval of the final rule amounts to arbitrary and capricious conduct in violation of section 706(2)(A) of the Administrative Procedures Act, that the approval infringes on Plaintiff's trademark in the name "Santa Rita," and that it dilutes the value of that trademark. On July 26, 2001, the ATF filed the Administrative Record and an opposition to Plaintiff's motion for preliminary injunctive relief. After Plaintiff filed its reply on August 2, 2001, the Court issued an Order requesting additional information from the parties regarding the scope of the ATF's consideration (or lack of consideration) of alternative names proposed by the commenters and, more importantly, by one of the petitioners. Each of the parties submitted a supplemental memorandum on August 6, 2001. Plaintiff filed a second supplemental memorandum on August 9, 2001.

## III. DISCUSSION

### A. *Injunctive Relief Standard*

In assessing whether to grant preliminary injunctive relief, which is considered an extraordinary remedy in this circuit, *see Dorfmann v. Boozer,* 414 F.2d 1168, 1173 (D.C.Cir.1969); *Mylan Pharm. Inc. v. Henney,* 94 F.Supp.2d 36, 58 (D.D.C.2000), a court must balance four factors: (1) whether the movant is substantially likely to succeed on the merits; (2) whether the movant would suffer irreparable injury if the injunction were not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the public interest would be furthered by the injunction. *See Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir.1998) (citing *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995)).

In applying this four-factored standard, district courts employ a sliding scale under which a particularly strong showing in one area can compensate for weakness in another. *See CityFed Fin.,* 58 F.3d at 747. Thus, "[a]n injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Notwithstanding the fluid nature of this familiar four-part inquiry, "it is particularly important for the [movant] to demonstrate a substantial likelihood of success on the merits." *Barton v. Dist. of Columbia,* 131 F.Supp.2d 236, 242 (D.D.C.2001) (citing *Benten v. Kessler,* 505 U.S. 1084, 1085, 112 S.Ct. 2929, 120 L.Ed.2d 926 (1992)). If the movant fails to do so, "it would take a very strong showing with respect to the other preliminary injunction factors to turn the tide in plaintiff['s] favor." *Davenport v. Int'l Bhd. of Teamsters,* 166 F.3d 356, 366 (D.C.Cir.1999).

Furthermore, a party seeking preliminary injunctive relief must demonstrate at least some irreparable injury because "the basis for injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin.,* 58 F.3d at 747 (quoting *Sampson v. Murray,* 415 U.S. 61, 88, 94

S.Ct. 937, 39 L.Ed.2d 166 (1974)) (alterations omitted). Thus, if the movant makes no showing of irreparable injury, "that alone is sufficient" for a district court to refuse to grant preliminary injunctive relief. *Id.; see also Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985) ("We believe that analysis of [irreparable harm] disposes of these motions and, therefore, address only whether the petitioners have demonstrated that in the absence of a stay, they will suffer irreparable harm.").

In this circuit, injury is irreparable only if it is "both certain and great." *Wisconsin Gas*, 758 F.2d at 674. This two-part definition requires first that the alleged harm "be actual and not theoretical" and " 'of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm.' " *Id.* (quoting *Ashland Oil, Inc. v. FTC*, 409 F.Supp. 297, 307 (D.D.C.), *aff'd*, 548 F.2d 977 (D.C.Cir. 1976)) (emphasis in original). Second, financial harm alone cannot constitute irreparable injury unless it threatens the very existence of the movant's business. *See Wisconsin Gas*, 758 F.2d at 674 (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n. 2 (D.C.Cir.1977)). As the United States Court of Appeals for the District of Columbia Circuit has explained,

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

*Wisconsin Gas*, 758 F.2d at 674 (quoting *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (1958)).

In its motion, Plaintiff presents the Court with three separate arguments supporting its request for preliminary injunctive relief. First, Plaintiff contends that the ATF has violated the Administrative Procedures Act; second, it asserts that the ATF's conduct amounts to infringement of Plaintiff's trademark; and third, Plaintiff argues that the ATF's conduct dilutes the value of that trademark. The Court first assesses Plaintiff's likelihood of success on the merits with respect to each of its arguments and then considers whether Plaintiff has demonstrated irreparable injury. Finally, the Court addresses the effect that an injunction would have on third parties and the manner in which such relief would impact the public interest. Based on its analysis of these factors, the Court concludes that preliminary injunctive relief is not warranted in these circumstances. Accordingly, the Court shall deny Plaintiff's motion.

### B. Likelihood of Success on the Merits

#### 1. Violation of the Administrative Procedure Act

Plaintiff asserts that the ATF's decision to recognize the Santa Rita Hills AVA is arbitrary and capricious in several respects in violation of section 706(2)(A) of the Administrative Procedures Act ("APA"). *See* Mem. in Supp. of Mot. for T.R.O. & Prelim. Inj. at 18 [hereinafter "Pl.'s Mem."] (citing 5 U.S.C. § 706(2)(A)). First, Plaintiff contends that the ATF's decision contravenes its duty under the FAA to prevent consumer confusion. *See id.* at 19–24. Second, Plaintiff argues that the ATF has failed to take steps to avoid conflict with the protections that the Lanham Trademark Act offers to trademark holders. *See id.* at 24–28. Third, Plaintiff contends that past decisions issued by the ATF in comparable circumstances illustrate that the Bureau operates in an im-

permissibly inconsistent manner. *See id.* at 28–29. And finally, Plaintiff asserts that the ATF wrongly failed to consider alternative names for the Santa Rita Hills AVA. *See id.* at 29–30.

"The scope of review under the 'arbitrary and capricious' standard [of section 706(2)(A) ] is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfr. Ass'n of United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *see also Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 814 (D.C.Cir.1983) ("This review is focused and restricted, and it does not permit us to substitute our judgment for that of the agency."); *Wawszkiewicz v. Dep't of Treasury*, 670 F.2d 296, 301–03 (D.C.Cir.1981) (applying traditional "arbitrary and capricious" standard in reviewing the ATF's labeling regulations). Under this deferential standard, federal courts must uphold an agency's decision as long as the agency demonstrates that it has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' " *State Farm*, 463 U.S. at 43, 103 S.Ct. 2856 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)).

The D.C. Circuit has explained that this traditional "arbitrary and capricious" review is generally distinct from the form of review articulated in *Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and its progeny.[8] *See Arent v. Shalala*, 70 F.3d 610, 614–15 (D.C.Cir.1995). As the *Arent* court explained,

> *Chevron* is principally concerned with whether an agency has authority to act under a statute. Thus, a reviewing court's inquiry under *Chevron* is rooted in statutory analysis and is focused on discerning the boundaries of Congress' delegation of authority to the agency; and as long as the agency stays within that delegation, it is free to make policy choices in interpreting the statute, and such interpretations are entitled to deference.

*Id.* at 615 (internal citations omitted). Where, by contrast, a statute plainly authorizes an agency authority to act and "[t]he only issue ... is whether the [agency]'s discharge of that authority was reasonable," the case "falls within the province of traditional arbitrary and capricious review." *Id.* at 616.

Notably, the parties to the present dispute agree that Congress has authorized the Department of the Treasury and the ATF to promulgate rules, such as the one at issue here, that give force to the FAA. *See, e.g.,* Pl.'s Mem. at 5 ("The FAA Act established broad federal regulatory authority over the interstate trade in alcoholic beverages and vested that authority in the Secretary of the Treasury and his delegates."). Thus, as Plaintiff's motion reveals, the parties' disagreement focuses

---

8. *Chevron* review entails a familiar, two-step analysis under which a court considers whether an agency's actions are authorized by statute. Preliminarily, a court must ask whether "Congress has directly spoken to the precise question at issue;" if so, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* So long as the agency's interpretation is "reasonable and consistent with the statute's purpose," the Court must defer to the agency's interpretation. *See Chemical Mfrs. Ass'n v. EPA*, 217 F.3d 861, 866 (D.C.Cir.2000) (quoting *Independent Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 643 (D.C.Cir.2000)).

not on whether the FAA authorizes the ATF to promulgate rules recognizing AVAs, but rather on whether the ATF acted reasonably in reaching its decision under the statute in this circumstance. Accordingly, the Court's inquiry is apparently controlled by the traditional "arbitrary and capricious" standard articulated in *State Farm*. *See Arent*, 70 F.3d at 615–16 (citing *State Farm*, 463 U.S. at 29, 103 S.Ct. 2856).

The D.C. Circuit has noted, however, that "*Chevron* review and arbitrary and capricious review overlap at the margins." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C.Cir.1996) (quoting *Arent*, 70 F.3d at 615). In some cases, such as the matter presently before this Court, a finding that an agency has acted arbitrarily or capriciously in discharging its statutory duties could be phrased as a conclusion that the agency's interpretation of the controlling statute is unreasonable. *Id.* In such cases, "a determination that the [agency]'s decision is arbitrary and

capricious ... is functionally equivalent to a determination that [the agency]'s interpretation of the [governing statute] is unreasonable under *Chevron*." *Id.* In other words, in certain cases, such as this one, in which *Chevron* review and arbitrary and capricious review overlap, the two standards of review are "functionally equivalent" to one another. *See id.; see also Arent*, 70 F.3d at 616 n. 6 ("In such situations, what is 'permissible' under *Chevron* is also reasonable under *State Farm*."). Thus, while the Court reviews the ATF's conduct under the arbitrary and capricious standard enunciated in *State Farm*, the Court notes that an analysis premised on *Chevron* would produce the same result.[9]

**a. The ATF Examined the Pertinent Information and Provided a Cogent Explanation for its Decision to Approve the AVA**

■ An agency's decision withstands arbitrary and capricious review as long as the agency has "examine[d] the relevant data and articulate[d] a satisfactory expla-

---

9. In its motion, Plaintiff asserts that the deferential *Chevron* standard does not apply in this matter in any case. *See* Pl.'s Mem. at 25–26 & n. 8; *see also* Pl.'s Reply at 12–16. Rather, Plaintiff contends that the ATF has adopted a *policy* with regard to trademark rights without promulgating a corresponding rule in accordance with its regulatory authority. *See id.* at 25–26. Plaintiff maintains that this policy, unsupported by any rule or statute, warrants substantially diminished deference under *United States v. Mead Corp. See* Pl.'s Mem. at 25 n.8 (citing *Mead*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)).

Without considering whether Plaintiff has properly characterized the level of deference reviewing courts owe to such policies, the Court finds that Plaintiff has inaccurately framed the nature of its challenge. Quite simply, the logical focus of Plaintiff's suit is not some gossamer policy that Plaintiff attributes to the ATF. Rather, Plaintiff contests the ATF's clearly articulated decision to approve the Santa Rita Hills AVA. As noted, the parties do not dispute that Congress has expressly authorized Treasury (and the ATF) to

regulate AVAs. Moreover, the guidelines that control AVA rulemaking are clearly presented in the Code of Federal Regulations. Accordingly, the Court rejects Plaintiff's contention that *Mead*, not *Chevron*, should apply in this case.

Plaintiff also contends that the Court may proceed without deference when reviewing agencies' factual conclusions, and it refers the Court to *Proffitt v. FDIC*, 200 F.3d 855, 860 (D.C.Cir.2000), for support. *See* Pl.'s Reply at 12–13. Plaintiff's argument, and its reliance on *Proffitt*, are misplaced because they both turn on a provision of the APA that has not been invoked in this case. Specifically, the plaintiff in *Proffitt* challenged the FDIC's conduct under APA section 706(2)(E), which requires courts to overturn "agency action, findings, and conclusions found to be ... unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). In this case, by contrast, Plaintiff has invoked section 706(2)(A), which challenges agency conduct on the ground that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

nation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43, 103 S.Ct. 2856. In this case, the entire Administrative Record, and especially the final rule itself, demonstrate that the ATF engaged in the thorough analysis that the regulations and statute mandate. Based upon its careful review of each of the applicable criteria and its assessment of the evidence presented by the petitioners and others, the ATF decided to recognize the Santa Rita Hills AVA.

For instance, upon reviewing the maps, reports, publication excerpts, and other texts provided by the petitioners, the ATF concluded "that the name 'Santa Rita Hills' is locally known as referring to the area specified in the petition." Final Rule, 66 Fed.Reg. 29,476, 29,477; *see also* 27 C.F.R. § 9.3(b)(1) (regulatory criterion).[10]

Indeed, as the ATF found, the supporting documentation clearly demonstrates that the area in question is known by the name "Santa Rita Hills." *See generally* A.R. Tab A, Attachments (evidence submitted in support of petition). Based on its review of the evidence submitted with the petition, the ATF also reached the reasonable conclusion that the boundaries described in the petition reflect the actual boundaries of the viticultural area in question and that the proposed AVA is viticulturally distinct from surrounding regions. *See* Final Rule, 66 Fed.Reg. 29,476, 29,-478–79; *see also* 27 C.F.R. § 9.3(b)(2), (3).

Furthermore, in keeping with the mandate of the statute and the regulations, *see* 27 U.S.C. § 205(e); 27 C.F.R. § 4.39(a), the ATF concluded that approval of the Santa Rita Hills AVA is not likely to result in consumer confusion.[11] *See* Final Rule,

10. In a misguided effort to demonstrate that the petitioners' application does not satisfy the regulatory criteria for AVA approval, Plaintiff informs the Court that "Santa Rita Hills" does not appear "in common geographic source materials," such as the street maps available on the Internet website "mapquest.com." *See* Pl.'s Mem. at 13 n.4. This argument is plainly unavailing. Whether or not the name appears in the select sources Plaintiff chooses to consult is beside the point because the name does appear in numerous other sources that the petitioners provided to the ATF in support of their application. *See* AR, Tab A. Notably, Plaintiff does not contend that it provided its sources to the ATF for consideration prior to the Bureau's issuance of the final rule, nor do any such sources appear in the Administrative Record. *Cf. Cmty. for Creative Non–Violence v. Lujan*, 908 F.2d 992, 998 (D.C.Cir.1990) ("[J]udicial review of administrative action should normally be based on the 'full administrative record' that was before a decisionmaker at the time challenged action was taken."). Moreover, as the ATF correctly notes, the name "Santa Rita Hills" does, in fact, appear in the topographic maps available at the "mapquest.com" website. *See* Defs.' Opp'n at 30 n. 22; *see also* Topographic Maps, *at* http://www.mapquest.com.

11. In its motion, Plaintiff argues that the new AVA will result in consumer confusion, and it offers the testimony of wine expert Steven C. Boone in support. *See, e.g.,* Pl.'s Mem. at 15–16; *see also* Boone Decl.

Without engaging in an assessment of whether Mr. Boone's testimony establishes a likelihood of confusion, the Court finds that his declaration is immaterial to the present analysis. "[J]udicial review of administrative action should normally be based on the 'full administrative record' that was before a decisionmaker at the time challenged action was taken." *Cmty. for Creative Non–Violence*, 908 F.2d at 998 (D.C.Cir.1990); *see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C.Cir.2001). In this case, Plaintiff did not provide the ATF with a copy of Mr. Boone's testimony in advance of the Bureau's decision. Thus, because the declaration was not before the ATF when it reached the challenged decision, the Court disregards it in its review of the ATF's actions.

In its reply, Plaintiff correctly observes that, in some narrowly defined circumstances, courts review material outside of the administrative record. *See* Pl.'s Reply at 7–8, 21–22.

66 Fed.Reg. 29,476, 29,477. In reaching this conclusion, the ATF researched past label applications and determined that the Bureau has already approved numerous labels bearing the name "Santa Rita" for wines other than those produced by Plaintiff. *See* Final Rule, 66 Fed.Reg. 29,476, 29477–78; *see also* AR, Tab G, G(1)-(16) ("Santa Rita" labels approved by the ATF). Specifically, the ATF has approved nine "Santa Rita" labels for wines originating in Italy, one for a French wine, and six for wines produced in the United States. *See* AR, Tab G, G(1)-(16). Importantly, the ATF observed in the final rule that "[it] is aware of no reported consumer confusion" stemming from the existence of these non-Chilean "Santa Rita" wines.[12] *See* 66 Fed.Reg. at 29,478. Moreover, the Administrative Record includes no indication that any of the wineries that produce these other wines opposed the ATF's recognition of the Santa Rita Hills AVA.

The ATF's conclusion regarding the unlikelihood of consumer confusion also stemmed from the labeling requirements that would clearly distinguish Plaintiff's wines from those produced in the Santa Rita Hills AVA. *See* Final Rule, 66 Fed. Reg. 29,476, 29,478. The ATF clearly explained its reasoning as follows:

The fact that imported products are required to state the words 'Imported by' followed by the name and address of the party responsible for importation would, in the case of a product with a 'Santa Rita Hills' appellation, signal to consumers that the product is domestically produced rather than Chilean in origin. The fact imported products are also required by Customs regulations to state the words 'Product of ...' followed by the country of origin, further identifies the origin of imported products to consumers, as distinct from domestic products. Likewise, the fact that domestic prod-

Notably, however, the case upon which Plaintiff chiefly relies explains that extra-record review is not appropriate in this circumstance. *See Amfac Resorts LLC v. Dep't of Interior*, 143 F.Supp.2d 7 (D.D.C.2001). The *Amfac* court observed that there are several "narrow exceptions" to the general rule and proceeded to observe the manner in which a party could convince a court to rely on one of them to look beyond the record. *See id.* at 10–13. In this case, Plaintiff has only informed the Court that exceptions to the general rule of limitation exist. It has not, however, indicated which exception might apply in this case, nor has it offered cogent support for the application of any exceptions. Accordingly, the Court shall adhere to the general rule and disregard the extra-record testimony of Mr. Boone.

12. In a related vein, Plaintiff argues that it has strenuously protected its "Santa Rita" brand name in a variety of circumstances. *See* Pl.'s Mem. at 4. In one notable instance, Plaintiff contested the actions of one of the petitioners who sought approval of the AVA at issue in this suit. That petitioner filed a trademark application for the name "Santa Rita Vineyards" in May of 2000. *See* Decl. of

Anibal Ariztia in Supp. of Mot. for T.R.O. & Prelim. Inj. ¶ 12. After the application was approved, Plaintiff sent the petitioner a cease-and-desist letter demanding that it abandon the mark, and the petitioner complied. *See id.*

Despite its purported vigilance, Plaintiff apparently did not find that the non-Chilean "Santa Rita" labels described above threatened to cause consumer confusion, nor did Plaintiff take steps to prevent the wineries from using them. As ATF observed, one of the American labels already approved with the name "Santa Rita" relates to a wine that is produced within the AVA at issue in this suit. *See* 66 Fed.Reg. at 29,477. Not surprisingly, the owner of that winery submitted a letter in support of the proposed Santa Rita Hills AVA. *See id.; see also* AR, Tab B(8) (letter of support). In that letter, the winery owner wrote that his winery has produced a wine under the proprietary name "Santa Rita Cuvee" since 1995. *See also* AR, Tab B(8). Curiously, there is no indication that Plaintiff has acted in any manner to prevent the winery from producing or selling the wine under that name.

ucts are required to indicate the name and address of the bottler or packer, minimizes the likelihood of confusion between a 'Santa Rita Hills' wine and a product of Santa Rita in Chile or any other place.

*Id.; see also* 27 C.F.R. §§ 4.35a(a), (b), 4.38(c) (ATF labeling regulations); 19 C.F.R. § 134.11 (Customs labeling regulations).

In short, the ATF's decision to recognize the Santa Rita Hills AVA fully complies with the statutory mandate and the corresponding criteria set forth in the regulations. The ATF expressly assessed each of the criteria, including the possibility of consumer confusion, and reached the reasonable determination that the available evidence supports approval of the proposed AVA. Simply stated, nothing about the ATF's approach to the proposed AVA indicates that it acted arbitrarily or capriciously. The Court might have reached the contrary conclusion if, for instance, the ATF had ignored its statutory and regulatory obligations and reached its conclusions based on considerations of its own

creation. As noted, however, the ATF did not ignore the statutory and regulatory criteria in this instance. Rather, it applied them meticulously.

**b. The ATF's Decision to Recognize the Santa Rita Hills AVA Does Not Conflict with the Lanham Trademark Act**

■ Plaintiff also contends that the ATF's decision regarding the AVA effectively overrides its trademark rights under the Lanham Trademark Act and that, accordingly, the decision constitutes arbitrary and capricious conduct.[13] *See* Pl.'s Mem. at 24–28. The Court rejects Plaintiff's reasoning in this regard for three interrelated reasons.

First, the elements of a cause of action under the Lanham Trademark Act, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"), make clear that the ATF's conduct in this circumstance could not give rise to liability for trademark infringement or dilution. "Under the Lanham Act, a trademark's owner is protected from use, imitation, or copy of the mark if such use is likely to cause consumer confusion." *Appleseed Found., Inc. v. Appleseed Inst., Inc.,* 981 F.Supp. 672, 674 (D.D.C.1997) (citing Lanham Act, 15 U.S.C. § 1114(1)).[14] In order

---

**13.** Plaintiff introduces its motion and its argument regarding trademark rights by declaring that "[t]he 'Santa Rita' brand ... has been protected as a *federally registered trademark* for many decades." Pl.'s Mem. at 1 (emphasis added). The Court notes that this statement and Plaintiff's corresponding trademark argument are somewhat misleading in light of the fact that Plaintiff only applied for trademark registration on the name "Santa Rita" in March of 1998, *after* the petitioners started rallying around the prospect of a Santa Rita Hills AVA. That is, while Plaintiff registered many other marks long ago, including a somewhat similar mark on the name "Santa Rita Reservado MRC D. Fernandez Concha Santiago De Chile," it only sought registration for "Santa Rita" after the AVA petition process was underway. While Plaintiff correctly notes that the Lanham Act protects registered and unregistered marks alike, and while Plaintiff contends that it enjoys common law trademark protections as well, those

articulations of the law do not help explain Plaintiff's claim to longstanding trademark registration on the name "Santa Rita."

**14.** In its opposition, the ATF refers the Court to a comparable eight-part inquiry articulated by the Second Circuit. *See* Defs.' Opp'n at 26; *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir.1961). While the *Polaroid* decision is not controlling in this circuit, the inquiry that it contains supports the conclusion that this Court articulates above. In pertinent party, the *Polaroid* court held that, "[w]here the products are different, the prior owner's chance of success is a function of many variables: the strength of his make, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." *Id.* at 495.

to prevail on an infringement claim, a "plaintiff must show (1) that it owns a valid trademark, (2) that the mark is distinctive on its own or that it has acquired a secondary meaning, and (3) that there is a likelihood of confusion." *Id.* at 675 (citing *Sears, Roebuck & Co. v. Sears Fin. Network, Inc.,* 576 F.Supp. 857, 861 (D.D.C.1983)). When considering the likelihood of confusion, a court "looks at the effect that *defendant's use of the mark* has or would have on prospective consumers within the relevant product market." *Id.* (emphasis added).

In the case before this Court, of course, the ATF has not *used* the name "Santa Rita" or "Santa Rita Hills" in any meaningful sense whatsoever. While the Bureau has recognized an AVA under the name "Santa Rita Hills," it has not used, imitated, or copied the name at all. Because such conduct is a necessary element of an infringement claim, and since it is entirely absent in this instance, the Court finds that the ATF"s decision does not, in and of itself, contravene Plaintiff's trademark rights. The same reasoning applies to Plaintiff's corollary assertion that the ATF's decision conflicts with the Lanham Act by diluting the value of Plaintiff's mark. "In order to establish a case for dilution ..., [a] plaintiff must show (1) that it owns a mark which is 'distinctive and famous', (2) that [the] defendant adopted its mark after plaintiff's became famous, and (3) that [the] defendant's mark dilutes the famous mark." *Appleseed,* 981 F.Supp. at 676–77 (quoting 15 U.S.C. § 1125(c)). Just as the ATF has not used, imitated, or copied the name "Santa Rita," it has not "adopted" the name as a competing mark.

Thus, the ATF's recognition of the Santa Rita Hills AVA does not squarely impact any trademark rights. Because trademark actions entail detailed, fact-intensive inquiries into the alleged infringement, a potential violation of Plaintiff's trademark rights would turn on an analysis of a particular, allegedly infringing label. Here, quite plainly, the ATF has not produced any labels itself. Furthermore, ATF has not yet even considered any labels bearing the AVA designation that wineries may wish to use, and, by logical extension, it has not approved any. Of course, it is entirely possible or, indeed, likely that wineries will eventually produce labels bearing the Santa Rita Hills AVA designation. If Plaintiff concludes that any of those labels infringes on its trademark, Plaintiff is fully entitled to bring suit under the Lanham Act against the entity that has developed the label. In other words, the ATF"s approval of the Santa Rita Hills AVA does not affect Plaintiff's right to pursue trademark claims against individual wineries if and when those wineries use labels that infringe or dilute Plaintiff's mark.

The second reason that Plaintiff's trademark reasoning fails pertains to the geographic nature of AVA designations. The Lanham Act expressly contemplates the interplay between trademarks and geographical designations, and effectively provides that geographical designations, when used as such, are not amenable to trademark protection. In pertinent part, the Lanham Act states that a trademark shall not be registered if it "[c]onsists of a mark which ... when used on or in connection with the goods of the applicant is primarily geographically descriptive of them...." 15 U.S.C. § 1052(e)(2). As explained in a leading trademark treatise, "[t]erms that are descriptive of the geographic location or origin of goods and services are regarded by the law as not being 'inherently distinctive' marks." 2 J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition § 14:1 at 14–3 (4th ed.2001). Accordingly, "geographical terms should remain free for all sellers in that portion of

the world to use descriptively with equal honesty." *Id.* at 14–4. Similarly, the Restatement (Third) of Unfair Competition explains the treatment of geographic designations as follows:

> That a watch is Swiss, that wine is from California, that maple syrup is from Vermont, or that a dress has been designed in New York or Paris are facts in which consumers are interested and which sellers therefore wish to disclose in a prominent manner. While not all locales are of special importance to consumers, merchants should remain free to indicate the location of their place of business or the geographic origin of their goods without unnecessary risk of infringement.

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 14, cmt. d (1995). Thus, while the Lanham Act does provide trademark protection for geographically based marks that have acquired distinctiveness or sec-ondary meaning, *see* 15 U.S.C. § 1052(f); *see also Boston Beer Co. v. Slesar Bros. Brewing Co.,* 9 F.3d 175 (1st Cir.1993),[15] the Court finds that an entity with a non-geographic interest in a particular name is not empowered, under the Lanham Act, to contest the ATF"s recognition of a distinct geographic region that bears that name.

Third, and perhaps most importantly, the purpose that underlies AVA recognition is qualitatively distinct from the purposes of trademark protection.[16] Moreover, the practical import of AVA recognition is entirely separate from the import of trademark registration. Notably, an AVA designation merely serves as an indicator of geographic origin, and no individual winery owns an absolute and exclusive right to employ the designation. Thus, as long it uses a qualifying percentage of grapes from within the AVA to produce a particular wine, any winery is entitled to employ the AVA as

---

**15.** In *Boston Beer,* the First Circuit affirmed the district court's determination that the plaintiff's brand name, "Boston Beer," was not entitled to trademark protection. *See Boston Beer,* 9 F.3d at 176. The court reached its decision upon observing that "a geographical term … can be protected, but only if it has acquired 'secondary meaning' by which consumers associate it with a particular product or source." *Id.* at 180. The court explained that "secondary meaning has been established in a geographically descriptive mark where the mark no longer causes the public to associate the goods with a particular place, but to associate the goods with a particular source." *Id.* at 181 (citing *Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes,* 871 F.2d 590, 595 (6th Cir.1989)); *see also Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.,* 148 F.3d 417 (4th Cir.1998) (applying the *Boston Beer* standard and determining that plaintiff had established secondary meaning in the trademark covering its golf courses).

**16.** In a related vein, the ATF refers the Court to the House Report that accompanied the passage of the FAA. In pertinent part, the Report states that section 205(e)(5) of the FAA "does not extend to cases of conflict within the industry as to proprietary rights in trade or brand names." *See* Defs.' Opp'n at 15 (quoting H.R. REP. No. 1542, at 13 (1935)). In effect, the ATF argues that this passage demonstrates that the FAA does not require the agency to consider trademark ramifications when assessing an AVA application. *See* Defs.' Opp'n at 15.

While the ATF's argument in reliance on the legislative history is attractive, it is unavailing in this narrow circumstance for two reasons. First, the quoted commentary relates to trademark conflicts between members of the industry in question. In the present dispute, by contrast, Plaintiff challenges the conduct of the ATF itself, not the actions of a competitor within the industry. Second, AVAs themselves and the process leading to their recognition are creatures of regulations promulgated by the ATF long after the FAA was enacted. Thus, because the accompanying House Report was published long before the ATF issued the AVA regulations, the quoted provision could not possibly have been intended to relate to AVA approval.

an appellation of origin. A trademark, in sharp contrast, reflects a single entity's absolute and exclusive control over a particular designation. Unlike an AVA designation, which is effectively available to any entity operating within a geographic area, a trademark may only be used by the registrant itself. As the ATF aptly explains in its opposition, "AVA designations differ from trademark because a trademark is used to convey to the consumer the *identity of the manufacturer or producer* of the good whereas the AVA is used to describe the *geographical origin* of the good and can be used by many wineries." Defs.' Opp'n at 12 (emphasis in original). Thus, by approving the Santa Rita Hills AVA, the ATF has not developed any name or mark on its own. Rather, the ATF has simply taken the step of recognizing a preexisting geographic entity, certifying its viticultural singularity, and confirming the boundaries that encompass the region.

In short, contrary to Plaintiff's argument that the ATF's decision conflicts with the requirements of the Lanham Act, the Court finds that the ATF has proceeded in a manner in which the Lanham Act and the FAA are effectively reconciled. Specifically, while the Lanham Act affords Plaintiff certain rights and causes of action with respect to the use of its marks, the ATF's decision to approve the Santa Rita Hills AVA does not impede those rights. If a winery ultimately uses a label in a manner that infringes on Plaintiff's trademark, Plaintiff may bring suit to enforce its trademark notwithstanding the ATF's prior approval of the AVA.

**c. The ATF's History of AVA Determinations Does Not Demonstrate Arbitrary and Capricious Inconsistency**

■ In support of its motion, Plaintiff argues that the ATF has reached inconsistent decisions when considering comparable AVA applications that presented ostensibly confusing names like the one at issue in this case. *See* Pl.'s Mem. at 28–29. Opining that such inconsistent policymaking constitutes arbitrary and capricious conduct, Plaintiff contends that the Court must suspend the ATF decision regarding the Santa Rita Hills AVA. *See id.*

Without engaging in an analysis of whether such inconsistency would amount to arbitrary and capricious conduct, the Court observes that prior ATF decisions on AVA applications do not evince the inconsistency that Plaintiff apparently perceives. In each case, the ATF has considered whether the proposed name poses a likelihood of consumer confusion. In cases in which the Bureau did *not* find a likelihood of confusion—including cases like this one in which the proposed name included an additional word such as "District" or "Hills" that distinguishes it from an otherwise identical name—the ATF approved the AVA as proposed. In cases in which the ATF determined that the proposed name was *likely* to cause consumer confusion, the Bureau turned its assessment to alternative names proposed by the petitioners or by commenters.

For instance, in 1982 the ATF issued a final rule recognizing an AVA under the name "Chalone." *See* 47 Fed.Reg. 25,517 (June 14, 1982). While the petitioners in that case originally proposed the name "The Pinnacles," the ATF observed that "there has not been a sufficient showing that the name 'The Pinnacles' is locally and/or nationally known as referring to the area specified by the proposed boundaries [and that,] [t]herefore, the proposed name does not meet the requirement of 27 C.F.R. § 4.25a(e)(2)(i)." 46 Fed.Reg. 49,-600, 49,601 (Oct. 7, 1981). In addition, the ATF acknowledged that the name was identical to a brand name used by another winery and concluded that approval under

that name could result in consumer confusion. *See* 47 Fed.Reg. at 25,517; *see also* 46 Fed.Reg. at 49,601. Specifically, after explaining that the proposed name exactly mirrored an existing brand, the ATF found that "the name 'The Pinnacles' would not be appropriate for the proposed viticultural area because of Paul Masson's trademark claims and the possible consumer confusion that would result if 'The Pinnacles' were approved for the proposed viticultural area." 46 Fed.Reg. at 49,601. Accordingly, the ATF considered alternative names submitted by the petitioner and others. Relying on the petitioner's statement "that the most satisfactory name would be 'the simple and unadorned word "Chalone",' " the ATF approved the AVA under that alternative name. 47 Fed.Reg. at 25,517,

In 1988, the ATF recognized the Wild Horse Valley AVA. *See* 53 Fed.Reg. 48,244 (Nov. 30, 1988). Prior to its final rulemaking, the ATF received only one comment in opposition. *See id.* at 48,246. That comment, submitted by a winery located outside of the AVA in question, informed the ATF that the commenter sold several wines under the name "Wild Horse" and that it owned a trademark in the name. *See id.* The ATF approved the proposed AVA notwithstanding the comment, concluding that the petition satisfied the applicable criteria and "find[ing] that Federal [trademark] registration of the term 'Wild Horse' does not limit the Bureau's authority to establish a viticultural area known as 'Wild Horse Valley.' " *Id.*

Similarly, in 1993 the ATF considered an AVA petition requesting recognition under the name "Spring Mountain." *See* 58 FR 28,348 (May 13, 1993); 58 Fed.Reg. 8726 (Feb. 17, 1993). As in the case of the Chalone AVA, the ATF received comments demonstrating that the proposed name would be *identical* to a brand name already in use. *See* 58 Fed.Reg. 8726, 8726–

27. In the face of such comments, "the petitioner wrote to ATF to amend its original petition by changing the proposed viticultural area name to 'Spring Mountain District.' " *Id.* at 8727. The ATF thereupon approved of the AVA in its amended form. *See* 58 Fed.Reg. 28,348, 28, 348.

Finally, earlier this year the ATF approved an application for AVA recognition under the name "Diamond Mountain District." *See* 66 Fed.Reg. 29,695 (June 1, 2001). While the petitioners had originally proposed the name "Diamond Mountain," they agreed to amend their proposal by adding the word "District" because another winery, Diamond Mountain Vineyards, suggested that the unadorned name "Diamond Mountain" could cause consumer confusion. *See id.* at 29,695–96. As in the Spring Mountain District case, the ATF recognized the AVA under the amended name. *See id.*

The ATF's approach to the Santa Rita Hills AVA petition is consistent with each of these prior rulemakings, and they are all consistent with one another. Unlike the factual situations present in the Chalone and Spring Mountain cases, the ATF did not receive any comments in this case demonstrating that the proposed name is identical to an existing brand. Rather, in this case, the petitioners presented the ATF with a proposed name, "Santa Rita *Hills*," that differs from the similar name, "Santa Rita," that Plaintiff seeks to protect. As in the cases of Wild Horse *Valley*, Spring Mountain *District*, and Diamond Mountain *District*, the ATF found that the proposed name—including a distinguishing word applied to the end—was not likely to result in consumer confusion. Additionally, unlike in the Chalone case, the ATF determined that the name Santa Rita Hills is locally known as referring to the area specified. Finally, while the petitioners in the Chalone, Spring Mountain

**24**

District, and Diamond Mountain District cases sought name changes or acquiesced to proposed alternatives, the petitioners in this case never seriously proposed another name nor did they have occasion to consider an alternative proposed by some other entity. For these reasons, the Court finds that the ATF's approach to the Santa Rita Hills AVA conforms with the approach it has taken in preceding AVA applications.

**d. The ATF Did Not Impermissibly Fail to Consider Alternative Names**

■ Plaintiff also contends that the ATF failed to consider viable alternative names and that such a failure constitutes arbitrary and capricious conduct. *See* Pl.'s Mem. at 29–30. Indeed, as Plaintiff observes, *see id.*, "an agency rule would be arbitrary and capricious if the agency ... entirely failed to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43, 103 S.Ct. 2856. Plaintiff neglects to observe, however, that agency "rulemaking 'cannot be found wanting simply because the agency failed to include every alternative device and thought conceivable by the mind of man ... regardless of how uncommon or unknown that alternative may have been....'" *Id.* at 51, 103 S.Ct. 2856 (quoting *Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 551, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978)). Thus, Plaintiff's argument fails because alternative names were not an important aspect of the ATF's analysis in this circumstance. The Court reaches this conclusion for two reasons.

First, as explained above, the ATF reasonably concluded that the name proposed in the petition was not likely to confuse consumers. Accordingly, there was simply no need to consider any alternatives. Second, as the ATF explained in response to the Court's request for additional information, it did not receive any serious or authorized suggestions for alternative names. *See* Defs.' Suppl. Mem. at 1–2;

Drake Decl.; Loehr Decl. As the ATF has argued and as its decisions regarding other AVAs demonstrate, the Bureau does not suggest specific alternatives itself. Rather, it only addresses proposals offered by the petitioners or by other interested parties. In this case, neither Plaintiff nor the petitioners provided the ATF with serious alternative suggestions. While one of the petitioning wineries sent the ATF a draft letter suggesting an alternative name, *see* AR, Tab F(4), the petitioners ultimately withdrew the suggestion because, acting collectively, they decided not to amend their application. *See* Defs.' Suppl. Mem. at 1–2; Drake Decl.; Loehr Decl. Thus, because the petitioners retracted the draft suggestion, it was not properly before the ATF, and the Bureau had no reason to consider it.

Moreover, the Court notes that only one of the twenty-four comments in opposition to the proposed AVA actually included a proposed alternative name, and even that single proposal was clearly offered tongue-in-cheek. Specifically, the president of a wine distributor in Minnesota proposed that the ATF approve the AVA under the name "Gallo Hills" so that the petitioners could appropriate credibility and name recognition from "an even better known winery." AR, Tab D(17). Not surprisingly, the Administrative Record contains no indication that the ATF acted on this cynical suggestion.

\* \* \*

In sum, after engaging in a thorough review of the parties' pleadings, the Administrative Record, and the applicable law, the Court finds that Plaintiff is not substantially likely to succeed on the merits of its claim that the ATF's conduct in this instance was arbitrary and capricious in violation of the APA. In reviewing and ultimately approving the application for the Santa Rita Hills AVA, it appears that

the ATF carefully adhered to the applicable statutory and regulatory criteria, avoided conflict with the Lanham Act, and acted in a manner consistent with its prior rulemaking. Thus, having determined that Plaintiff does not have a substantial likelihood of success with its APA claim, the Court turns to Plaintiff's trademark claims.

### 2. Trademark Infringement and Trademark Dilution

■ Apart from its APA claim, Plaintiff also requests preliminary injunctive relief on the ground that the ATF's approval of the Santa Rita Hills AVA infringes on its trademark and dilutes the mark's value. *See* Pl.'s Mot. at 18–19, 30–36. The Court finds that, on the present record, Plaintiff is unlikely to succeed on the merits its trademark claims because they are not yet ripe for judicial review.[17]

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Relying on this articulation of the ripeness doctrine, the D.C. Circuit recently determined that a pharmaceutical manufacturer's claims regarding potential competitors were not yet ripe. *See Pfizer Inc. v. Shalala,* 182 F.3d 975, 978–79 (D.C.Cir.1999). Specifically, the court determined that the manufacturer's proprietary rights could give rise to an actionably ripe claim only after a competitor sought approval for a competing product and after the Food and Drug Administration granted it. *See id.* Where, by contrast, the

agency's final decision does not directly and immediately impact the plaintiff's rights, the dispute is not ripe for review. *See id.* at 979.

The *Pfizer* court's ripeness analysis parallels the analysis applicable in this case. Notwithstanding the ATF's approval of the Santa Rita Hills AVA, neither the ATF nor any other entity has yet employed the name in a manner that could give rise to a cause of action for trademark infringement or dilution. As the Court explained above in its analysis of the Lanham Act's relation to the ATF's approval of the AVA, any ultimate trademark dispute will turn in large measure on the actual, precise appearance of the allegedly infringing label. Until an entity actually uses, imitates, or copies Plaintiff's mark, Plaintiff cannot advance a cause of action based on its trademark rights. While wineries may soon seek approval for actual labels bearing the appellation "Santa Rita Hills," no such labels are on the market at present. Until the ATF actually approves a label bearing the allegedly infringing or diluting name, Plaintiff's trademark claims are not ripe.

Thus, the Court finds that Plaintiff is not substantially likely to succeed on the merits of any of its claims. Based on the Court's review of the parties' pleadings and the present record, it appears that the ATF did not act arbitrarily and capriciously in approving the Santa Rita Hills AVA and that Plaintiff's trademark claims are not ripe for judicial review.

### C. Irreparable Harm

■ Under the familiar standard governing motions for temporary restraining orders and preliminary injunctions, a movant must also demonstrate that it would

---

**17.** The ATF presents this ripeness argument, *see* Defs.' Opp'n at 26–27, and, alternatively, contends that a government entity is not subject to contributory or vicarious liability for trademark violations. *See id.* at 27–29. Because the Court concludes that Plaintiff's trademark claims are not yet ripe, it does not consider the ATF's alternative argument.

suffer irreparable harm absent injunctive relief. Because "the basis for injunctive relief in the federal courts has always been irreparable harm," a movant's failure to show any irreparable injury provides "sufficient" grounds on which a court may deny such a motion. *CityFed Fin.*, 58 F.3d at 747. In this case, the Court finds that Plaintiff has failed to demonstrate that it would suffer irreparable harm absent preliminary injunctive relief. This conclusion, coupled with the Court's determination that Plaintiff is not substantially likely to succeed on the merits, requires the Court to deny Plaintiff's motion.

Preliminarily, the Court notes that Plaintiff has "the right to petition [the ATF] for the . . . amendment . . . or repeal of [the final] rule." 5 U.S.C. § 553(e). As the ATF argues in its opposition, Plaintiff could file such a petition in which it offers new evidence such as the Boone Declaration and suggests a proposed alternative name. *See* Defs.' Opp'n at 24 n. 16. While aware of this right to petition for amendment or repeal, *see* Pl.'s Reply at 14, Plaintiff does not address the manner in which the right impacts its allegedly irreparable injury. Notwithstanding Plaintiff's silence on the matter, the Court notes that the right to petition for amendment or repeal of the final rule means that Plaintiff's feared injury is not "certain." Quite simply, if Plaintiff provides the ATF with evidence indicating that the name "Santa Rita Hills" will lead to consumer confusion, and if Plaintiff offers a viable alternative name, the ATF may meaningfully alter the challenged final rule and thereby avert the harm to Plaintiff anticipates.

Turning to the trademark claims, Plaintiff accurately observes that trademark infringement may indeed constitute *de facto* irreparable harm. *See* Pl.'s Mem. at 36–37; *see also Appleseed*, 981 F.Supp. at 677 ("Trademark infringement by its very nature causes irreparable injury."). None-

theless, as explained in greater detail above, any such harm is purely speculative at this stage in the litigation. Until a winery actually produces wine with an ATF-approved label bearing the name "Santa Rita Hills," Plaintiff's purported harm will be speculative. In its motion, Plaintiff effectively concedes that it will not face actual harm until labels are approved. Specifically, Plaintiff asserts that the "ATF's decision to permit use of 'Santa Rita Hills' as a viticultural area designation *and its forthcoming approval of 'Santa Rita Hills' labels* will allow these labels immediately to be used in commerce, causing irreparable harm to Viña Santa Rita and its well-known brand." Pl.'s Mem. at 2 (emphasis added). At present, no label bearing the Santa Rita Hills appellation has been submitted for ATF approval, and, quite obviously, none has been approved. Even if and when labels are approved, a determination of Plaintiff's harm would require a careful inquiry into the precise nature of the allegedly infringing label. Because such harm is only speculative at this point, it does not amount to irreparable injury. *Cf. Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 745–46 (D.C.Cir.1991) (injunctions are not available to litigants who seek "to prevent injuries neither extant nor presently threatened, but only feared") (quoting *Exxon Corp. v. FTC*, 589 F.2d 582, 594 (D.C.Cir.1978)).

Apart from its contention that it would suffer harm through trademark infringement or dilution, Plaintiff also asserts that the ATF's regulations contain an internal inconsistency which, following the Bureau's approval of the Santa Rita Hills AVA, precludes Plaintiff from using "Chile" as an appellation of origin. *See* Pl.'s Mot. at 16 (construing 27 C.F.R. § 4.39(i)). More specifically, prior to the ATF's approval of the Santa Rita Hills AVA Plaintiff was entitled to use its Santa Rita

brand name and indicate that its wines originate in Chile without facing the regulatory requirement that "Chile" qualify as an approved appellation of origin. Following the recognition of the AVA, by contrast, Plaintiff may only use its brand name if it also adorns its labels with an approved appellation of origin or if it includes other information that "dispel[s] the impression that the geographic area suggested by the brand name is indicative of the origin of the wine." 27 C.F.R. § 4.39(i). Because "Chile" is not an approved appellation of origin, Plaintiff contends that the ATF's decision has unduly restricted its labeling practices.

While it does not articulate how this "regulatory oversight" causes injury, Plaintiff implies that the regulations prevent it from informing consumers of the origin of its wine. Absent such information, Plaintiff suggests, consumers might purchase non-Chilean wines under the mistaken impression that they were produced by Plaintiff. While the ATF effectively concedes that its regulations contain the "oversight" that Plaintiff describes, the Bureau convincingly explains that this oversight does not actually result in any meaningful harm. *See* Defs.' Opp'n at 24–25.

The regulatory oversight, which ostensibly prevents Plaintiff from employing "Chile" as an appellation of origin, does not give rise to "certain and great" injury because, as the ATF observes, Plaintiff did not employ "Chile" as an appellation of origin prior to the approval of the Santa Rita Hills AVA. Indeed, a review of the Plaintiff's actual labels reveals that it employs a variety of *other* appellations, such as "D.O. Rapel Valley," "D.O. Maipo Valley—Chile," and "D.O. Lontue Valley." *See* AR, Tab D(24)(c) (Plaintiff's labels). Thus, even if the ATF's approval does preclude Plaintiff from using "Chile" as an

appellation of origin, it does not impact Plaintiff's present labeling practice.

Moreover, and perhaps more tellingly, regulations promulgated by the Customs Service unambiguously require Plaintiff to emblazon each of its labels with notice of the country of origin. Specifically, Plaintiff must indicate on its labels that its wines originate in Chile "in a conspicuous place," and such notice must be printed "as legibly, indelibly, and permanently as the nature of the article (or container) will permit." 19 C.F.R. § 134.11. In other words, while the ATF's regulations may prevent Plaintiff from using "Chile" as an appellation of origin, Plaintiff's labels will still conspicuously indicate the country from which the wines originate.

In its reply, Plaintiff presents a new tangent in support of its position regarding the "regulatory oversight." According to Plaintiff, *Bronco Wine Co. v. Dep't of Treasury*, 997 F.Supp. 1309 (E.D.Cal. 1996), demonstrates that AVA approval can severely harm wineries that produce wines under a brand name that is confusingly similar to the name of a new AVA. *See* Pl.'s Reply at 4–5. Indeed, as Plaintiff contends, the ATF seized thousands of cases of wine from the winery at the center of the *Bronco Wine* case. *See Bronco Wine*, 997 F.Supp. at 1310. Plaintiff also correctly notes that the seizure occurred after the ATF had approved an AVA under a name that was strikingly similar to the brand name that the winery had used. *See id.* Conveniently, however, Plaintiff neglects to recount other material information from the case that clearly distinguishes it from the present dispute. For instance, the ATF's decision to seize the wine was prompted in part by its realization that the winery was shipping wines without labels that the ATF had approved. *See id.* at 1312. Notably, the labels in question had not received original approval

prior to July 7, 1986, and, accordingly, they did not qualify for the grandfathering treatment applicable to Plaintiff's labels in this case. *See id.* As the Court recognized in *Bronco Wine,* wineries with grandfathered labels may use AVA names as brand names if they bear an appropriate appellation of origin or another "statement sufficient to dispel the suggestion that the wines are from the [AVA]." *Id.* As the Court has explained, Customs Service regulations require that Plaintiff's labels indicate the country of origin "conspicuous[ly,][and] as legibly, indelibly, and permanently" as possible.

For these reasons, the Court finds that Plaintiff has failed to demonstrate that it will suffer irreparable injury if the Court declines to issue a temporary restraining order or a preliminary injunction. The harm that might flow from Plaintiff's trademark claims is simply too speculative at present to qualify as irreparable. Moreover, the regulatory injury that Plaintiff describes does not appear likely to cause any actual harm.

### D. Harm to Other Interested Parties And Impact on The Public Interest

 Having concluded that Plaintiff is unlikely to succeed on the merits and that Plaintiff has failed to demonstrate that it would suffer irreparable harm without injunctive relief, the Court is satisfied that Plaintiff's motion should be denied regardless of its conclusions regarding the final two factors. Nonetheless, while neither party devotes much of its briefing to either factor, the Court assesses both of them prior to reaching a final conclusion. With regard to the third factor, Plaintiff contends that preliminary injunctive relief would not result in any "cognizable harm to third parties." Pl.'s Mot. at 37. Observing that the petitioning wineries have already waited several years for AVA approval, Plaintiff argues that requiring them to wait until this litigation is resolved "will not substantially impair any legitimate interest of the proponents of the AVA." *Id.* The ATF, on the other hand, argues that an injunction would redound "to the detriment of wine producers and grape growers in the Santa Rita [Hills] AVA as well as the public generally." Defs.' Opp'n at 29. While neither party articulates its position with meaningful precision, the Court finds that third factor stands in equipoise. While the ATF correctly observes that third-party wineries may have a genuine interest in printing the AVA designation on their labels as soon as possible, Plaintiff accurately notes that a temporary delay would not cause the wineries substantial harm.

Turning to the impact that injunctive relief would have on the public interest, Plaintiff contends that a denial of its pending motion would result in consumer confusion and trademark infringement. *See* Pl.'s Mem. at 38. The ATF, on the other hand, asserts that granting the motion would run counter the public interest because it would effectively leave consumers "in the dark." Defs.' Opp'n at 30. While neither of these positions reflects any meaningful impact that the Court's decision may have on the public interest, the Court finds that the ATF's argument is the more persuasive of the two. Notably, the harm that Plaintiff describes stems entirely from speculative consequences that the Court has already dispelled. As the Court concluded in its assessment of Plaintiff's APA claim, the ATF has reasonably determined that approval of the Santa Rita Hills AVA is not likely to cause consumer confusion. Moreover, the Court has also determined that the ATF's decision does not, in and of itself, impact Plaintiff's trademark rights. The ATF, on the other hand, correctly observes that an injunction would effectively deprive consumers of the information they might otherwise glean from a Santa Rita Hills appellation of origin on

qualifying bottles of wine. While this may indeed be a consequence, however, the Court does not share the ATF''s view that it would have a meaningful impact on the public interest. Accordingly, the Court finds that the fourth factor cuts weakly in favor of denying Plaintiff's motion for preliminary injunctive relief.

## IV. CONCLUSION

Upon a review of the parties' pleadings, the administrative record, and the applicable law, the Court finds that preliminary injunctive relief is not warranted in this case. Plaintiff is not substantially likely to succeed on the merits of its claims, and it has failed to establish that it would suffer irreparable harm without preliminary injunctive relief. Moreover, while the Court's decision will not meaningfully affect interested third parties, the impact that an injunction would have on the public interest counsels in favor of denying the requested relief. Accordingly, the Court shall deny Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. An Order accompanies this Memorandum Opinion.

## ORDER

For the reasons states in the accompanying Memorandum Opinion, it is, this 13 day of August, 2001, hereby

**ORDERED** that Plaintiff Sociedad Anonima Viña Santa Rita's Motion for Temporary Restraining Order and Preliminary Injunction [# 3] is DENIED.

**SO ORDERED.**